**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| MILTON HOLMES, Individually and On Behalf of a Similarly Situated Class of African-Americans, | § § § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-10-4841 |
| | § | |
| SERVICE CORPORATION INTERNATIONAL, | § § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

This is an employment discrimination suit alleging that Service Corporation International (SCI), which owns and operates funeral homes, discriminated against African-Americans in making promotions to certain management positions. The plaintiff, Milton Holmes, sued for himself and on behalf of a class of similarly situated African-Americans who were denied promotion or deterred from seeking promotion to the position of Location Manager at SCI's funeral homes in a nine-state area. Holmes alleged violations of § 1981 and sought both damages and injunctive relief.

After litigating for more than 30 months, Milton Holmes passed away in June 2013. A suggestion of death was filed and the executor of Holmes's estate, Holmes's son, Quinton Holmes, was substituted as the party plaintiff. He seeks class certification with himself as class representative. No other potential class member has asked to serve as class representative.

The motion to certify is pending. SCI contends that none of the claims can proceed on a classwide basis. Based on the parties' arguments, the evidence in the record, and the law, this court finds that the claims for equitable relief are moot and denies the motion to certify the remaining claims. The estate's damages claims may proceed. A status and scheduling conference on the

remaining claims is set for **July 29, 2014**, at 8:30 a.m.

The reasons for these rulings are explained in detail below.

## I.    Background

SCI is the largest provider of burial, cremation, and cemetery services in the United States, employing over 20,000 people.  (*Id.* at 3).  SCI owns and operates over 100 funeral homes in Texas, including 37 in the greater Houston area.  (Docket Entry No. 47, at 3).

Milton Holmes, who is African-American, was a funeral director and embalmer who had worked in the funeral-home business for over 30 years.  From 2003 until May 22, 2009, Holmes was a funeral director for Forest Park Lawndale Funeral Home in Houston, which is owned and operated by SCI.  (Docket Entry No. 73, at 4).  When Forest Park Lawndale's Location Manager, Dennis Nipp, was diagnosed with brain cancer in 2005, Holmes served as interim Location Manager.  In 2007, Nipp passed away and the Location Manager position became permanently available.  Holmes applied.  SCI hired Rene Salinas, a Hispanic male, despite Holmes's experience and an earlier statement by Nipp that Forest Park Lawndale was in "good hands" under Holmes.  (Docket Entry No. 73, at 4–5).

Between April 2007 and May 2009, Holmes applied for six other Location Manager positions and one General Manager position at SCI funeral homes.  On each occasion, he was rejected in favor of an applicant who was not African-American.  (*Id.*).  When Holmes spoke to other African-American SCI employees about his failed bids for promotion, he was told, "that's why we don't apply," "there's no point trying to move up," and "those jobs are for whites only."  (*Id.* at 8).  Another African-American employee told Holmes that when he had expressed interest in moving up in the company, he received "negative repercussions."  (*Id.*).

2

There are very few African-American SCI Location Managers.  The precise numbers are disputed.  The materials supporting certification are offered to show that African-Americans comprise 0.00111% of the Location Managers and that less than 0.00333% of the thousands of Location Managers between 2006 and 2010 were African-American.  (Docket Entry No. 10, at 7–8).  Some funeral homes served a primarily African-American clientele, including those under the Wilson Financial Group, which SCI acquired in 2009.  These homes did hire African-American Location Managers.  (Docket Entry No. 76).  When Holmes filed his suit, there were no African-American Location Managers at non-traditionally African-American funeral homes in the greater Houston area.  (Docket Entry No. 73, at 4).  Robbie Pape, director of SCI's Houston Market Support Center (MSC),[1]  admitted in her deposition that she could not name a single black employee who had been promoted to Location Manager during her 20 years with the company.  (Docket Entry No. 52, Ex. C at 69:3–10).  Setting aside the homes traditionally serving African-Americans, there are fewer than five African-American Location Managers at SCI funeral homes nationwide, representing 0.0035% of Location Managers nationally.  (Docket Entry No. 73, at 3–4).  There are no African-Americans on SCI's Board of Directors.  (Docket Entry No. 73, at 4).

On December 3, 2010, Holmes sued SCI on behalf of himself and similarly situated African-Americans.  He alleged that SCI intentionally engaged in practices, policies, customs, and usages made unlawful by 42 U.S.C. § 1981.  (Docket Entry No. 1, at 6).  As the case developed, Holmes

---

[1] SCI describes its "Market Support Centers" as "extensions of [their] corporate functions." (http://www.sci-corp.com/SCICORP/CareerSupport.aspx?alias=040103).  MSCs are centralized support services for SCI marketing directors who work within a particular MSC's designated geographic area.  There are four MSCs (New York City, Miami, Los Angeles, and Houston).  The putative class in this case involves applicants who were rejected from or dissuaded from applying for a Location Manager position at a non-traditionally African-American funeral home operating under the Houston MSC, which encompasses nine states and 452 funeral homes.

3

filed several amended complaints, the most recent claiming that SCI "maintained a policy of discrimination in the workforce, a hostile and discriminatory and retaliatory work environment, and an employment pattern or practice of intentional discrimination against African-Americans." (Docket Entry No. 73, at 11).

Besides the statistics demonstrating the dearth of African-Americans holding upper-level positions for SCI, discovery produced documents created by the consulting firm Bain & Company (Bain). SCI hired Bain in 2005 to perform marketing and research and to advise on strategy. (Docket Entry No. 66, at 2).  Bain recommended a strategy for growth called the "Customs Conscious location operating model," which involved customer segmentation based in part on demographics.  (Docket Entry No. 52, Ex. A).  Holmes relies on the Bain documents and the statistics to demonstrate a company-wide policy of discrimination in SCI's hiring and promotion of Location Managers.

Holmes died on June 28, 2013, with the motion for class certification pending.  (Docket Entry No. 85).  SCI contended that with no class representative, the class claims are moot and the case should be dismissed.  (Docket No. 88).  The plaintiff sought and obtained leave to appoint a new class representative.  The proposed new class representative is the executor of Holmes's estate, his son, Quinton Holmes.  (Docket No. 90).

The issue is whether the class can now be certified as to any claims.

## II.    Mootness

To satisfy standing requirements, "a plaintiff seeking injunctive relief based on an alleged past wrong must show that there is a real or immediate threat that he will be wronged again." *Plumley v. Landmark Chevrolet, Inc.*, 122 F.3d 308, 312 (5th Cir. 1997) (citing *City of Los Angeles*

*v. Lyons*, 461 U.S. 95, 111) (1983).  SCI's actions present no threat of future harm to the proposed class representative.  The named plaintiff's claims for injunctive relief cannot proceed.  Holmes's claim for injunctive relief is moot; the estate has no such claim.

The mootness or other failure of a named plaintiff's claim before class certification ordinarily requires dismissal.  *See, e.g., Bd. of Sch. Comm'rs of City of Indianapolis v. Jacobs*, 420 U.S. 128 (1975) (dismissing a class action when controversy no longer existed between the named plaintiffs and defendants); *Conditt v. Owens,* 457 F. App'x 420, 422 (5th Cir. 2012) ("dismissal of [plaintiff]'s complaint on its merits mooted any request for class certification); *Anderson v. CNH U.S. Pension Plan*, 515 F.3d 823, 826 (8th Cir. 2008) ("In a class action, dismissal on mootness grounds normally is required when the named plaintiffs' claims become moot prior to a decision on class certification").  In *Sosna v. Iowa*, 419 U.S. 393 (1975), the Supreme Court noted an exception to the general rule of dismissal after the named plaintiff's claim is mooted when a controversy remains "alive" for the rest of the class.  *Id.* at 401.  *Sosna* involved a class that had already been certified when the case became moot as to the named plaintiff, but the Court left open the possibility for certification even after the named class representative no longer has a claim at stake.  *See Id.* at 402 n.11.  In *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388 (1980), the Court held that claims that were "so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires" may not be moot. *Id.* at 399.

Holmes's claims against SCI do not appear to fall into the "narrow category of disputes that are saved from dismissal for mootness because they are 'capable of repetition, yet evading review.'" *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1045–46 (5th Cir. 1981).  The Supreme Court

has made clear that "the fact that the named plaintiff no longer has a personal stake in the outcome of a certified class action renders the class action moot unless there remains an issue capable of repetition, yet evading review." *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 754 (1976) (internal quotation marks omitted).  SCI's alleged actions are capable of repetition, but not as to the past or present named plaintiff.  The actions may be challenged by others, which means they will not evade review.  Dismissal without prejudice of the injunctive-relief claims is appropriate.

Holmes's estate has justiciable claims for money damages.  *See Henschen v. City of Houston, Tex.*, 959 F.2d 584, 587 (5th Cir. 1992) ("Justiciability must be analyzed separately on the issues of money damages and the propriety of equitable relief").  The issue is whether these damages claims satisfy the Rule 23 requirements for class certification.

## III.   Class Certification

Under Rule 23, parties seeking class certification must satisfy all four of the Rule 23(a) requirements and meet at least one of the Rule 23(b) categories.  *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2548, 180 L. Ed. 2d 374 (2011).  A district court must apply a "'rigorous analysis' of Rule 23 prerequisites" to certify a class.  *Madison v. Chalmette Ref., L.L.C.*, 637 F.3d 551, 554 (5th Cir. 2011) (citing *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982)).  "The party seeking certification bears the burden of proof."  *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996).  That burden is by a preponderance of the evidence.  *See Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 228–29 (5th Cir. 2009).  The rigorous analysis may involve consideration of the merits of the underlying claim, to ensure that they are capable of presentation on a classwide basis consistent with the Rule 23(a) numerosity, commonality, typicality, and

adequacy requirements, and, for a Rule 23(b)(3) damages class, with the predominance and superiority requirements. *See Dukes*, 131 S. Ct. at 2551.

### A.    Rule 23(a)

A proposed class must meet four requirements:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23

### (1)    Numerosity

There is no fixed numerical threshold that a class must meet to satisfy the numerosity requirement; "[t]he proper focus is not on numbers alone, but on whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors." *Phillips v. Joint Legislative Comm. on Performance & Expenditure Review of Miss.*, 637 F.2d 1014, 1022 (5th Cir. 1981). "The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Northwest, Inc., v. EEOC*, 446 U.S. 318, 330 (1980). Apart from the number of potential class members, the Fifth Circuit considers "the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim." *Zeidman*, 651 F.2d at 1038.

The putative class is defined as the named plaintiff and "similarly situated African-American employees, applicants, and others who . . . were rejected or dissuaded from applying for a Location Manager position at any non-traditionally African-American funeral home owned and operated by SCI under its Houston Market Support Center" between 2006 and 2010. (Docket Entry No. 73, at

1).  SCI operates 452 funeral homes across nine states under the Houston MSC.  (Docket Entry Nos. 73, 57).  The wide geographical area supports a finding that joinder would be impracticable.  But there is scant evidence of the size of the proposed class.[2]   A sample of 35 funeral homes in the greater Houston area showed only one other African-American having applied for a Location Manager position during the relevant period.  (Docket No. 76, at 36).  The proof is complicated by the fact that SCI does not keep records of those who could have applied or the race of those who did.  (Docket Entry No. 30, at 17).  The lack of applications may indicate that African-American employees were dissuaded by SCI's discriminatory policies.  But the number of those who could have applied but did not – those deterred – is difficult to estimate, much less establish by a preponderance of the evidence.

The Fifth Circuit faced a similar fact pattern in *Phillips*.  As in this case, because the defendants in *Phillips* "did not record the race of its applicants, it is impossible to tell how many black applicants there were."  637 F.2d at 1022.  The court found that the inability of both parties to either identify or discern the total number of class members cut in favor of the plaintiffs, holding that "joinder of unknown individuals is certainly impracticable." *Id.*, citing *Jack v. American Linen Supply Co.*, 498 F.2d 122, 124 (5th Cir. 1974).  Both *Phillips* and *Jack*, however, were decided before *Falcon* and *Dukes*, and *Phillips* is distinguishable because the plaintiffs had shown at least 33 class members.  *See* 637 F.2d at 1022.  No such evidence is present here.

"In order to satisfy his burden with respect to this prerequisite, a plaintiff must ordinarily

---

[2] An affidavit by Holmes recalls two African-Americans stating that "there's no point trying to move up," and "those jobs are for whites only."  (Docket Entry No. 73, at 8).  One other black employee received self-described "negative repercussions" after expressing interest in moving up in the company.  (*Id.*)

demonstrate some evidence or reasonable estimate of the number of purported class members."
*Zeidman*, 651 F.2d at 1038; *see also, Golden v. City of Columbus*, 404 F.3d 950, 966 (6th Cir. 2005)
("impracticability of joinder must be positively shown, and cannot be speculative"); 7A CHARLES
ALAN WRIGHT & ARTHUR R. MILLER, MARY KAY KANE, *FEDERAL PRACTICE AND
PROCEDURE* § 1762 (3d ed. 2001) (stating that the party seeking certification "bear[s] the burden
of showing impracticability and mere speculation as to the number of parties involved is not
sufficient to satisfy Rule 23(a)(1)").   The present record provides little to show or support an
estimated class size that would make joinder inappropriate.   Even assuming numerosity is met,
however, certification is inappropriate on other grounds.

### (2)   Commonality

Commonality requires plaintiffs seeking certification "'to demonstrate that the class
members have suffered the same injury.'"  *Dukes*, 131 S. Ct. at 2551 (quoting *Falcon*, 457 U.S. at
156).   In *Dukes*, the Supreme Court explained that showing the existence of a common question of
law or fact is insufficient to satisfy Rule 23(a)(2); classwide proceedings must be able "to generate
common *answers* apt to drive the resolution of the litigation."   131 S. Ct. at 2551.   All class
members must have a "common contention . . . of such a nature . . . that determination of its truth
or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."
*Id.*

Satisfying the *Dukes* standard for commonality requires "significant proof" that SCI
"operated under a general policy of discrimination."   *Falcon*, 457 U.S. at 159, n.15.  *See also Ellis
v. Costco Wholesale Corp.*, 657 F.3d 970, 983 (9th Cir. 2011) ("the district court was required to
resolve any factual disputes necessary to determine whether there was a common pattern and

practice that could affect the class as a *whole*").  The evidence submitted to purport a general, centralized policy is the Bain recommendation that SCI implement the "Customs Conscious location operating model" for "recruiting and retaining staff members" from a funeral home's "target religion/culture,"  (Docket Entry No. 73, at 9–10), with the statistical evidence  that "African-Americans currently comprise 0.00% of the General Managers or Location Managers at non-traditionally African-American funeral homes owned or operated by SCI under its Houston Market Support Center."  (Docket Entry No. 73, at 12).  The argument is that "[d]iscrimination against African-Americans is the Defendant's standard operating procedure rather than a sporadic occurrence, or a discretionary call on behalf of individual managers."  (Docket Entry No. 73, at 12).

The issue is whether SCI's hiring practices resulting in the disparity along racial lines were a matter of individual funeral home management discretion or of a centralized policy of excluding African-Americans.  The Supreme Court held in *Dukes* that allowing discretion by local supervisors over employment matters is "[o]n its face . . . just the opposite of a uniform employment practice that would provide the commonality needed for a class action."  131 S. Ct. at 2554.  The existence of individual discretion does not necessarily destroy commonality, but the party seeking class treatment has the burden of demonstrating "a common mode of exercising discretion that pervades the entire company."  *Id*. at 2554–55.

The evidence in the record is conflicting.  Depositions of SCI staff suggest that "there's very, very much autonomy with the marketing directors" to hire Location Managers.  (Docket Entry No. 42, Ex. A at 119:17–18, 120:5–7).  SCI presented evidence that it did not adopt the Bain-recommended hiring or promotion policy.  SCI's corporate policy prohibits basing the selection of a job candidate on ethnicity.  There is no evidence that during the relevant period, an SCI officer or

10

manager communicated to market directors that a funeral director's or Location Manager's culture, ethnicity, race, or religion was important.  (Docket Entry No. 42, Ex. A at 85).  If the preponderance of the evidence fails to show that SCI "operated under a general policy of discrimination," certification could not be granted, because each class member's claim for damages will rely on "individualized determinations of various issues of law and fact," *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 838 (5th Cir. 2012), and the need for such individualized determinations would likely "impede the generation of common answers."  *See* Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009).

### (3)   Typicality

"Rule 23(a) requires that the named representatives' claims be typical of those of the class." 476 F.3d 299, 314 (5th Cir. 2007).  The analysis focuses on whether the named representative's claims are typical, not whether the representative is.  *See Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002).  Before *Dukes*, the test for typicality was "not demanding."  *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999).  The analysis was "less on the relative strengths of the named and unnamed plaintiffs' cases than on the similarity of the legal and remedial theories behind their claims."  *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986).  The extent to which *Dukes* changed the threshold for typicality is unclear.  The Court noted that "[t]he commonality and typicality requirements of Rule 23(a) tend to merge."  131 S. Ct. at 2551 n.5 (citing *Falcon*, 457 U.S. at 157 n.13).  As this court has described it,

> typicality is commonality addressed from the perspective of the named plaintiffs. Commonality requires showing that, in fact, all members of the proposed class share a common claim, the validity of which can be determined on a classwide basis. Typicality requires showing that, in fact, the proposed representatives have that claim.

*M.D. v. Perry*, 294 F.R.D. 7, 29 (S.D. Tex. 2013).  The typicality requirement also overlaps with the adequacy requirement.  *See In re American Medical Sys.*, 75 F.3d 1069, 1083) ("The adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentive to pursue the claims of the other class members.").

The claims of all class members need not be identical.  *James v. City of Dallas, Tex.*, 254 F.3d 551, 571 (5th Cir. 2001).  But typicality demands that claims "arise from a similar course of conduct and share the same legal theory."  *Id.*  Whether the substituted named plaintiff's damages claims are typical of the absent class members' claims is unclear on this record.  And to the extent the putative class members may have injunctive claims for reinstatement that the named plaintiff cannot assert, the named plaintiff is neither typical nor adequate.  Typicality is not satisfied on this record.

### (4)    Adequate Representation

"Rule 23(a)'s adequacy requirement encompasses class representatives, their counsel, and the relationship between the two."  *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001).  The adequacy requirement mandates "an inquiry into [1] the zeal and competence of the representative's counsel and . . . [2] the willingness and ability of the representative to take an active role in and control the litigation and to protect the interests of absentees."  *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005) (internal quotations omitted).  "Adequacy is for the plaintiffs to demonstrate; it is not up to defendants to disprove the presumption of adequacy."  *Berger*, 257 F.3d at 482.

The zeal and competence of counsel are not at issue in this case. But the death of the named plaintiff presents challenges to meeting the Rule 23(a)(4) requirement.  Class representatives "must satisfy the court that they, and not counsel, are directing the litigation.  To do this, class

representatives must show themselves sufficiently informed about the litigation to manage the litigation effort." *Unger v. Amedisys Inc.*, 401 F.3d 316, 321 (5th Cir. 2005). The proposed class representative, the estate executor, Quinton Holmes, was not involved in this case until July 26, 2013. (Docket Entry No. 86). The plaintiff argues that "the Estate would be an adequate class representative because it steps seamlessly into the shoes of Mr. Holmes." (*Id.*) There are no further arguments, and no evidence, as to the executor's familiarity with the facts and legal theories of this case or as to his ability to represent the interests of the class as a whole. In complex actions, named plaintiffs are expected to rely heavily on counsel. But the claims in this case depend on the personal experiences of SCI management aspirants. The executor's apparent lack of familiarity with the facts, the funeral home business, and the legal issues is not addressed. The inability of the named representative to pursue claims for injunctive relief contributes to making the estate an inadequate class representative. The estate is an inadequate class representative.

### B.      Rule 23(b)

In addition to satisfying the four 23(a) requirements, parties seeking class certification must do so under one of the three types of class action in 23(b). At different points in this case, certification has been urged under 23(b)(1), 23(b)(3), and a hybrid of 23(b)(2) and (b)(3). (Docket Entries. No. 52, 53).

### (1)      Rule 23(b)(1)

Rule 23(b)(1)(A) permits class actions if separate actions would create a risk of "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." FED. R. CIV. P. 23. It "focuses on class action suitability from the defendant's perspective." *Casa Orlando Apartments, Ltd. v. Fed. Nat.*

*Mortgage Ass'n*, 624 F.3d 185, 196 (5th Cir. 2010).  Rule 23(b)(1)(B) certification is proper when "adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests."   FED. R. CIV. P. 23.  Certification is improper under both Rule 23(b)(1)(A) and 23(b)(1)(B) in this case.  Separate adjudication of claims for compensatory and punitive damages poses no risk of inconsistent adjudications or incompatible standards of conduct due to the "individual-specific nature" of such claims.  *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 421 n.16.

### (2)  Rule 23(b)(2)

No claims for injunctive or equitable relief remain here.  The mootness of the injunctive claims makes Rule 23(b)(2) inapplicable.  This subsection "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Dukes*, 131 S. Ct. at 2557.

### (3)  Rule 23(b)(3)

Assuming that the requirements of Rule 23(a) were met, Rule 23(b)'s requirements are not.  Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  FED. R. CIV. P. 23.  In *Amchem Products, Inc. v. Windsor*, the Supreme Court held that "the predominance criterion is far more demanding" than the commonality requirement of Rule 23(a).  521 U.S. 591, 624 (1997).  This remains true after *Dukes*.  *See Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 ("If anything, Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a).").  The lack of clarity

14

as to whether a preponderance of the evidence shows a general, company-wide policy of discrimination in promotion or hiring decisions for Location Managers means that the burden of showing that common questions of law or fact predominate and that a class action is superior is not met. Class certification is denied on the basis of the present record, without prejudice to reassertion, if appropriate, by different proposed class representatives.

## IV.   Conclusion

The motion for class certification is denied. The damages claims for the named plaintiff's failure-to-promote causes of action remain. A status conference is set for **July 29, 2014**, at 8:30 a.m. in Courtroom 11-B. Nothing in this opinion precludes putative class members from asserting individual claims for relief.

SIGNED on July 3, 2014, at Houston, Texas.

Lee H. Rosenthal
United States District Judge